KENT R. RAYGOR, Cal. Bar No. 117224
JAY T. RAMSEY, Cal. Bar No. 273160
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone: 310.228.3700
Facsimile: 310.228.3701
kraygor@sheppardmullin.com
jramsey@sheppardmullin.com

Attorneys for Plaintiff
THE GREATER LOS ANGELES SOFTBALL ASSOCIATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THE GREATER LOS ANGELES SOFTBALL ASSOCIATION, a California non-profit corporation,

Plaintiff,

v.

ERIC RYAN, an individual, and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:17-cv-04404

**COMPLAINT FOR: (1) TRADEMARK, SERVICE MARK AND TRADE NAME INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, PASSING OFF, FALSE ADVERTISING, FALSE ENDORSEMENT, AND UNFAIR COMPETITION (15 U.S.C. § 1125(A); (2) COMMON LAW TRADEMARK, SERVICE MARK, AND TRADE NAME INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, PASSING OFF, FALSE ADVERTISING, FALSE ENDORSEMENT, AND UNFAIR COMPETITION; (3) UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING (CAL. BUS. & PROF. CODE §§ 17200 AND 17500); (4) CONVERSION OF CORPORATE ASSETS; (5) BREACH OF FIDUCIARY DUTY; (6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (7) INTENTIONAL AND NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC**

**ADVANTAGE; (8) DECLARATORY JUDGMENT CONCERNING OWNERSHIP OF ASSETS; AND (9) CANCELLATION OF FEDERAL SERVICE MARK REGISTRATIONS, 15 U.S.C. § 1604.**

**DEMAND FOR JURY TRIAL**

Plaintiff The Greater Los Angeles Softball Association ("**GLASA**") alleges the following against Defendant Eric Ryan ("**Ryan**").

## INTRODUCTION

1. GLASA is a nonprofit corporation dedicated to providing a safe space for athletes to come together and compete in athletic competition, with an emphasis on LGBT athletes and softball. It has a long history of supporting the LGBT community and the greater Los Angeles Community as a whole. Its mission is now under threat.

2. Eric Ryan, who served as a member of the Board of Directors and as an Officer of GLASA, has been stealing GLASA's corporate assets for his own personal gain. In his position at GLASA, Ryan had a duty to act on behalf of GLASA and in its best interests. Since 2008, GLASA has put on a sports event in Las Vegas, known as the Sin City Shootout. It started as a softball tournament with teams competing from across the country and has since expanded into the largest LGBT sporting festival in the world, incorporating numerous other sports and events. In addition to his duties as a Board Member and Officer of GLASA, Ryan was appointed chairman of GLASA's planning committee for the Sin City Shootout. He served in that role for many years, helping to successfully operate and expand GLASA's event. Hundreds of other GLASA members and volunteers have also worked tirelessly to make the event a success.

3. Unbeknownst to GLASA, Ryan has been abusing his position for his own personal gain. For years, Ryan has been diverting funds away from GLASA and to himself. Now, Ryan has stolen GLASA's corporate assets and is attempting to put on the tournament himself without GLASA's knowledge, approval, or involvement. His blatant theft has already caused GLASA substantial damage and his continued efforts to interfere with GLASA's event is threatening its viability and success. As part of his scheme to take what is not his, Ryan is also defaming

GLASA to others in the LGBT sporting community and in the community at large. This lawsuit is about bringing an end to Ryan's misconduct.

## PARTIES

4. GLASA is a nonprofit public benefit corporation organized under the laws of the State of California with its principal place of business in Los Angeles, California. It is the owner of the intellectual property and other assets that are the subject of this action and the holder of the rights to assert the claims asserted herein.

5. Ryan is an individual. GLASA is informed and believes that Ryan resides at 3838 Bixby Drive, La Verne, California 91750. From about mid-2005 to June 2, 2017, Ryan served as a member of the Board of Directors of GLASA and as an officer of GLASA.

6. The true names and capacities of the defendants named herein as Does 1 through 10, whether individual, corporate, associate or otherwise, are unknown to GLASA, which therefore sues those defendants by such fictitious names. GLASA is informed and believe, and thereon alleges, that each of the defendants designated as a "Doe" defendant is legally responsible for the events hereinafter alleged and legally caused injury and damages proximately thereby to GLASA as herein alleged. Plaintiffs will seek leave to amend this Complaint when the true names and capacities of the Doe defendants have been ascertained.

## JURISDICTION AND VENUE

7. The First and Ninth Claims for Relief arise under the federal Lanham Act, 15 U.S.C. §§ 1051, *et seq*. This Court has original subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8. The Second, Third, Fourth Fifth, Sixth, and Seventh Claims for Relief arise under California statutory and common law. This Court has subject matter jurisdiction over the Second and Third Claims for Relief pursuant to 28 U.S.C. § 1338(b) because the claims are joined with substantial and related claims under the federal Lanham Act, 15 U.S.C. §§ 1051, *et seq*. This Court also has subject matter

jurisdiction over the Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief on the basis of supplemental jurisdiction under 28 U.S.C. § 1367(a), because: (a) the federal and state law claims asserted herein are based upon the same operative facts; (b) the Court's exercise of jurisdiction over the pendent state law claims will promote judicial economy, convenience, and fairness to the parties; and (c) such claims are so related to the First and Ninth Claims for Relief that they form part of the same case or controversy under Article III of the United States Constitution.

9. The Eighth Claim for Relief seeks a declaratory judgment regarding, among other things, ownership of assets, including certain assets subject to the Lanham Act, 15 U.S.C. §§ 1501 *et seq.* This Court thus has original jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202. This claim is so related to the other claims asserted in this Complaint that it forms part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred or had effects in this District, and because Defendant Ryan: (a) reside in this District for purposes of 28 U.S.C. § 1391(b); and (b) are subject to personal jurisdiction in this District.

## **FACTUAL ALLEGATIONS**

### **A. Background**

11. GLASA formed in 1978 as the Los Angeles region's primarily LGBT softball league. It started with just six teams playing on one small field at a park in West Hollywood. Today, GLASA operates a league of over thirty teams and 600 athletes playing in four separate divisions, sorted according to skill and ability. GLASA also operates a women's only league. The games are played at Whittier Narrows Park on Sundays nearly year-round. GLASA also sends teams to the Gay

Softball World Series and is proud to say that its teams have been champions at all levels many times over.

12. GLASA also works to serve the larger Los Angeles community. GLASA was an early supporter, both financially and through volunteerism, of the efforts of "The Wall-Las Memorias" to establish an AIDS memorial in Lincoln Heights. The names of many of GLASA's founding members and early participants who passed as a result of AIDS-related complications are now listed on the memorial wall.

13. GLASA continues to grow and thrive, providing a safe space for LGBT athletes to compete, make friends, and come together.

**B. <u>Formation Of The Sin City Shootout</u>**

14. For many years, GLASA hosted and operated a biennial softball tournament in Los Angeles called the Tournament of the Stars. In or about late 2006, GLASA began looking to move its tournament to a new location so that the tournament could expand. A member of GLASA at the time, who was not Eric Ryan, suggested that GLASA host and operate a tournament in Las Vegas.

15. GLASA did not immediately decide to set its tournament in Las Vegas, but instead looked first to find a location closer to Los Angeles for the tournament. For example, GLASA's minutes for its August 8, 2007 Commission Meeting reflect: "For the next tournament, the committee is looking to get better fields closer to LA, and to get the sponsors and local business more involved. Glendale is prohibitively expensive, but Hjelte remains a possibility. It is unclear whether SF will be holding a Memorial Day tournament next year, and we are therefore working towards the prospect that there will be a [Tournament of the Stars] in 2008. Alternatively, there is the possibility of combining with Long Beach to have a joint tournament either Memorial Day or Fourth of July."

16. Notably, Ryan, who served as a Board Member and an Officer of GLASA (he was an Assistant Commissioner), was at the meeting. Nothing in the

minutes reflect that he suggested a tournament in Las Vegas or that he was planning a tournament on his own.

17. At GLASA's next meeting, on September 20, 2007, Ryan was not present. At that meeting, GLASA voted to host a tournament in Las Vegas in 2008: "GLASA sponsored Sin City Shootout 2008 in Las Vegas is tentatively scheduled for Martin Luther King weekend in January or Presidents' Day weekend in February." Nothing in the minutes reflect that the proposed Sin City Shootout was anyone's tournament other than GLASA's. Ryan was at the next GLASA meeting on October 9, 2007, where GLASA approved the September 20, 2007 minutes. Ryan did not claim at that time or any other time that the Sin City Shootout was his idea or his tournament. Rather, as everyone understood, the Sin City Shootout was GLASA's event and any work performed by any GLASA member, Officer, or Board Member was done on behalf of GLASA. At the October 9, 2007 meeting, with Ryan present, GLASA voted "to proceed with Sin City shootout on MLK Weekend 1/19 & 1/20 contingent upon field availability."

18. Ryan was ultimately appointed chairperson of the planning committee for the Sin City Shootout. He and others worked to plan and operate the event. His work as chairperson of the planning committee was on behalf of GLASA, as was any work Ryan did as an Officer and Board Member of GLASA.

19. Indeed, GLASA's Bylaws, which Ryan, as a Board Member and Officer knew about and voted on, have always required upmost duties and loyalties of Board Members and Officers. The Bylaws have long stated: "Nothing in this Article shall be construed to derogate in any way from the absolute duty of loyalty that every Director and officer owes to the Corporation."

20. GLASA's Bylaws also confirm that the Sin City Shootout was GLASA's event and matters involving the tournament were subject to GLASA's approval. In or about late 2007 or early 2008, GLASA's Bylaws were amended to create "The Sin City Shootout Committee." The Bylaws stated that the committee

"shall serve from year to year as a Permanent Committee. Its duties shall include all League sponsored tournament activity. To regularly, promptly (*i.e.*, up to date within two weeks), and accurately provide the financial reporting and controls necessary for the League Treasurer. The Committee shall seek timely approvals of the Commission (or Executive Board in off-season interim) necessary for scheduling and communication. To produce economically profitable tournament(s) that is a credit to gay athletics and our League image. Planning may include, Awards Banquet; Fields; Housing; Program; Public Relations; Social Activities (e.g. Calendar of Events); and Transportation."

21. The Bylaws have been amended from time to time, but at no time have the Bylaws indicated that the Sin City Shootout was anyone's event other than GLASA's. Today, the Bylaws read: "The Sin City Shootout Committee shall serve from year to year as a Standing Committee. Its duties shall include all League sponsored tournament activity for the Sin City Shootout. The Committee shall seek timely approvals of the Commission (or Executive Board in off-season interim) necessary for scheduling and communication. It will produce an economically profitable tournament that is a credit to gay athletics and the League image. Committee planning may include, Awards Banquet; Fields; Housing; Program; Public Relations; Social Activities (e.g. Calendar of Events); and Transportation. The Commission appoints the committee Chairperson for a one-year term beginning September 1st. The Chairperson can be re-appointed. The committee Chairperson appoints members of the committee with the approval of the Commissioner."

22. Finally, the Bylaws preclude any Board Member from voting on any item where that Board Member has a "direct personal or monetary interest [in the item] that is not common to other members of the organization." And the Bylaws preclude GLASA from being "a party to any contract or transaction . . . in which one or more of its Executive Board Members of officers has a material financial

interest." Simply put, the Sin City Shootout had to have been GLASA's event, else it would have never come about.

**C. <u>The Sin City Shootout Today</u>**

23. Today, the Sin City Shootout has grown into the largest LGBT sporting festival in the world. It includes competition not only in softball, but in numerous other sports. Operating the tournament includes, among other things, contracting with hotels to ensure sufficient space for the athletes, securing field locations, and organizing various social events for all athletes to attend. GLASA sends dozens of volunteers each year to help run the event, and its Sin City Shootout planning committee is charged with planning for and executing the event.

**D. <u>GLASA And Ryan Operated Consistently With The Understanding That The Sin City Shootout Was GLASA's Event</u>**

24. From the first Sin City Shootout in 2008 to the most recent event in 2017, GLASA and Ryan operated consistently with the understanding that it was GLASA's event.

25. GLASA provided financial support for upfront costs to secure necessary contracts and facilities and to advertise for the event. GLASA also agreed to assume liabilities arising from the event. And GLASA received the proceeds from the event.

26. Dozens of GLASA volunteers have committed their time and energy at each Sin City Shootout. Without this commitment from GLASA's volunteers, neither the first Sin City Shootout nor any other would have happened, let alone succeeded.

27. GLASA is also a member of the North American Gay Amateur Athletic Alliance ("NAGAAA"), which is a national LGBT softball organization. Without NAGAAA's support, which the Sin City Shootout obtained only because it was a GLASA event, neither the first Sin City Shootout nor any other would have happened, let alone succeeded.

28. As chairperson of the planning committee, Ryan would submit budgets for GLASA's approval and regularly update GLASA on the planning, execution, and results of the tournament. At no time during these updates did Ryan claim that the Sin City Tournament was his tournament. To the contrary, Ryan regularly referred to the Sin City Shootout, both internally at GLASA and externally to GLASA's partners, as a GLASA event. This reflects Ryan's understanding, consistent with everyone's understanding, that it was a GLASA event. For example, and without limitation:

(a) In the most recent Annual Report of the GLASA Executive Board dated October 11, 2016, for the year September 1, 2015 to August 31, 2016, Ryan gave an update on the Sin City Shootout: "The 2016 Sin City Shootout (tournament director Eric Ryan), ***GLASA's annual tournament***, was held in January 2016. Under Eric's direction, in 9 years it has grown from a regional tournament into the largest annual LGBT sporting event in the world, including 230 softball teams. The tournament has brought in over $130,000 ***for GLASA*** to help ***us*** remain financially stable and keep fees at a reasonable level." (Emphasis added.) He said the same thing in the 2015 Annual Report: "The 2015 Sin City Shootout (tournament director Eric Ryan), ***GLASA's annual tournament***, was held in January 2015. In the 9 years it has grown from a regional tournament into the largest annual LGBT sporting event in the world, including 200 softball teams. The tournament has brought in over $100,000 ***for GLASA*** to help ***us*** remain financially stable and keep fees at a reasonable level." (Emphasis added.)

(b) When engaging sponsors for the Sin City Shootout, Ryan used GLASA's name, confirming that any sponsorship monies would be paid to GLASA. For example, MillerCoors was a sponsor of the 2013 Sin City Shootout. The invoices that Ryan created and sent to MillerCoors for the sponsorship indicate that payment was to "GLASA – Sin City." Similarly, a GLASA member was able to secure the sponsorship of Toyota Financial Services, which paid GLASA.

(c) On information and belief, when Ryan would contact hotels and other venues, he would enter into contracts between the venue and GLASA, listing himself only as the contact person for GLASA.

(d) On information and belief, when Ryan contacted other sports leagues, he would indicate that the Sin City Shootout was a GLASA event. For example, in an email dated October 13, 2011, Ryan reached out to a basketball league and included with it the Sin City Shootout's logo, which indicates that it was presented by GLASA.

(e) On information and belief, GLASA was able to book the fields for the tournament in Las Vegas only because GLASA could show that it was a nonprofit corporation.

(f) GLASA maintained and paid for a storage facility to store equipment used in the Sin City Shootout.

29. The Sin City Shootout has also always been advertised to the public as a GLASA event. Ryan, as chairperson of GLASA's Sin City Shootout planning committee, directed and approved this advertising. For example, and without limitation:

(a) The Sin City Shootout website, www.sincityshootout.com, which was paid for by GLASA, advertised the most recent 2017 Sin City Shootout as follows: "On January 12-15, 2017 the Greater Los Angeles Softball Association (GLASA) will celebrate and host its 10th annual Sin City Shootout Sports Festival in Las Vegas, Nevada." On GLASA's behalf, Ryan and the planning committee were charged with updating and maintaining the website.

(b) Every Sin City Shootout in the past has been advertised as a GLASA event. For example, a Flyer advertising the 2011 tournament states that it was "Presented by" GLASA, and includes GLASA's logo. Emails advertising the event, including those inviting athletes and teams to register, indicated that GLASA was the host and included GLASA's logo. Those emails also indicated that they

were being sent on behalf of "Greater Los Angeles Softball Association," and provided GLASA's address. The system that maintained the email contact list and distributed the emails was paid for by GLASA.

(c) To the best of GLASA's knowledge, the GLASA logo was also included on all Sin City Shootout flyers, banners, advertisements, roster forms, and so on.

(d) When the Sin City Shootout expanded from a softball tournament to include other sports, those leagues were required to pay a fee to GLASA so that their athletes could attend the social events put on by GLASA.

**E. <u>GLASA Trademark's The Sin City Shootout Name</u>**

30. In or about 2011, Ryan became concerned that another softball league might try to usurp GLASA's tournament for itself and attempt to put on the Sin City Shootout itself. In an effort to prevent this, Ryan directed GLASA's then-treasurer to file for trademark protection of the Sin City Shootout logo using GLASA as the owner of the trademark. The application listed GLASA as the owner of the mark, with a doing-business-as ("dba") designation of Sin City Shootout. The serial number on the registration is 85429186.

31. On or about July 31, 2012, the Trademark Office sent a letter requesting additional information about the mark before the registration could be finalized. Upon information and belief, no response was provided to the letter. As a result, on or about February 26, 2013, the Trademark Office issued a Notice of Abandonment of the mark.

**F. <u>Without GLASA's Knowledge, Approval, Or Involvement, Ryan Steals Corporate Assets From GLASA</u>**

32. Unbeknownst to GLASA, and while Ryan was a Board Member and Officer of GLASA and chairperson of the Sin City Shootout planning committee, Ryan diverted and stole GLASA's assets, and is now attempting to cut GLASA out of the Sin City Shootout entirely. His actions constitute a violation of GLASA's

intellectual property rights, conversion of corporate assets, breaches of fiduciary duty, and interference with GLASA's contractual and prospective business relationships.

33. For several years, in return for GLASA securing so many rooms for the thousands of athletes that attend the Sin City Shootout, the host hotels have paid GLASA in rebates. Unbeknownst to GLASA, on information and belief, Ryan diverted some portion of the rebates owed GLASA to his own account.

34. On information and belief, Ryan intentionally failed to respond to the Trademark Office's letter requesting further information for the registration of the Sin City Shootout logo, thereby intentionally allowing GLASA to abandon the mark. Thereafter, on or about October 27, 2016, Ryan filed for trademark protection under his own name of the Sin City Shootout logo – the exact same logo that GLASA had previously filed for protection on. The serial number on Ryan's purported registration is 85429186.

35. On information and belief, Ryan has caused various hotels, venues, fields, other vendors and sponsors to enter into contracts him Ryan personally, rather than GLASA, in connection with the Sin City Shootout.

36. On information and belief, Ryan has changed the passwords to www.sincityshootout.com so as to prevent GLASA from being able to maintain and control GLASA's website. GLASA is unable to access the website at this time. Since doing so, Ryan has altered the website to advertise the 2018 Sin City Shootout as his tournament, removing any mention of GLASA, including GLASA's logo.

37. On information and belief, Ryan has changed the password to GLASA's PayPal account, which GLASA used for purposes of collecting monies from registrants to the Sin City Shootout. GLASA is unable to access the PayPal account at this time.

38. Ryan has failed to return various other GLASA assets, including, without limitation, equipment used for the Sin City Shootout and access to GLASA's storage facility where the equipment is kept.

39. On information and belief, Ryan has contacted softball teams and leagues, other sports leagues, and numerous other individuals, telling them that the Sin City Shootout is Ryan's event, not GLASA's. Ryan is taking these actions so as to prevent those teams, leagues, and athletes from engaging with GLASA on the 2018 Sin City Shootout.

40. On information and belief, Ryan has contacted and secured various fields and facilities under his own name so as to prevent GLASA from being able to secure those fields and facilities.

41. In addition to the foregoing, as a general matter, Ryan is purporting to plan and put on the 2018 Sin City Shootout himself, using the Sin City Shootout logo, without the approval or involvement of GLASA. In doing so, Ryan is intentionally infringing GLASA's rights and interfering with GLASA's ability to plan and execute the event.

### G. Ryan's Actions Have Caused And Are Continuing To Cause GLASA Irreparable Harm

42. Ryan's actions, as described above, have already caused GLASA substantial harm, including harm to GLASA's reputation and ability to plan and execute a successful 2018 event. In addition, if Ryan's conduct continues and he is permitted to interfere with GLASA's ability to put on the 2018 event, GLASA will be irreparably harmed.

## FIRST CLAIM FOR RELIEF

## [Trademark, Service Mark and Trade Name Infringement, False Designation Of Origin, Passing Off, False Advertising, False Endorsement, And Unfair Competition (15 U.S.C. § 1125(a))]

43. GLASA incorporates herein each and every allegation set forth above.

44. Ryan has used and is using GLASA's marks, as identified above, in commerce in connection with his attempt to put on a sports festival (in particular, the Sin City Shootout) in Las Vegas in 2018, all without the authorization or permission of GLASA, which owns the exclusive right to use the Sin City Shootout name, logo, and associated marks. Ryan is further is misrepresenting an association with the Sin City Shootout without GLASA's authorization or permission. Ryan's unlawful acts are aimed at: (a) causing confusion and mistake and misleading and deceiving the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA; and (b) misappropriating property and monies and obtaining profits, benefits, and advantages belonging to GLASA, for Ryan's own purposes and benefit.

45. GLASA is informed and believes that Ryan's unauthorized use and exploitation of GLASA's (and particularly the Sin City Shootout's) reputation, name, trademarks and trade dress, and good will and misrepresentations to the public have caused confusion and mistake and are likely to continue to cause confusion and mistake, and to mislead and deceive the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA, when in fact they are not.

46. Ryan's unlawful use and exploitation of GLASA's marks and intellectual property, corporate relationships, reputation, good will, property and assets, and Ryan's and misrepresentations to the public as set forth above, constitute trademark and service mark infringement, trade name infringement, false designation of origin, passing off, false advertising, false endorsement, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47. On information and belief, Ryan has committed these acts of infringement, false designation of origin, passing off, false advertising, false endorsement, and unfair competition with the intent of causing confusion and mistake and of misleading and deceiving the public into believing that Ryan and any

purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA, when in fact they are not.

48. On information and belief, Ryan, in engaging in the conduct described herein, willfully intended to trade on the reputation of GLASA and its intellectual property, including the Sin City Shootout tournament and logo, and GLASA's corporate relationships, reputation and good will, and to cause injury to GLASA.

49. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

50. GLASA has no adequate remedy at law. Unless Ryan is preliminarily and permanently enjoined from committing these unlawful acts as set forth above, GLASA will continue to suffer irreparable harm.

51. GLASA is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Ryan, and his agents, servants and employees, and all persons in active concert or participation with them, including, but not limited to, any and all third-party promoters, vendors, and other entities, from engaging in any further such acts in violation of the Lanham Act.

52. GLASA is further entitled to recover from Ryan the damages GLASA has sustained and will sustain, as well as any and all gains, profits, benefits, and advantages obtained and to be obtained by Ryan, as a result of Ryan's unlawful acts as described herein.

53. GLASA is further entitled to an award of enhanced damages and to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

## [Common Law Trademark, Service Mark And Trade Name Infringement, False Designation Of Origin, Passing Off, False Advertising, False Endorsement, And Unfair Competition]

54. GLASA incorporates herein each and every allegation set forth above.

55. Ryan has used and is using GLASA's marks, as identified above, in commerce in connection with his attempt to put on a sports festival (in particular, the Sin City Shootout) in Las Vegas in 2018, all without the authorization or permission of GLASA, which owns the exclusive right to use the Sin City Shootout name, logo, and associated marks. Ryan is further is misrepresenting an association with the Sin City Shootout without GLASA's authorization or permission. Ryan's unlawful acts are aimed at: (a) causing confusion and mistake and misleading and deceiving the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA; and (b) misappropriating property and monies and obtaining profits, benefits, and advantages belonging to GLASA, for Ryan's own purposes and benefit.

56. GLASA is informed and believes that Ryan's unauthorized use and exploitation of GLASA's (and particularly the Sin City Shootout's) reputation, name, trademarks and trade dress, and good will and misrepresentations to the public have caused confusion and mistake and are likely to continue to cause confusion and mistake, and to mislead and deceive the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA, when in fact they are not.

57. Ryan's unlawful use and exploitation of GLASA's marks and intellectual property, corporate relationships, reputation, good will, property and assets, and Ryan's and misrepresentations to the public as set forth above, constitute trademark and service mark infringement, trade name infringement, false designation of origin, passing off, false advertising, false endorsement, and unfair competition in violation of California common law.

58. On information and belief, Ryan has committed these acts of infringement, false designation of origin, passing off, false advertising, false endorsement, and unfair competition with the intent of causing confusion and mistake and of misleading and deceiving the public into believing that Ryan and any

purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA, when in fact they are not.

59. On information and belief, Ryan, in engaging in the conduct described herein, willfully intended to trade on the reputation of GLASA and its intellectual property, including the Sin City Shootout tournament and logo, and GLASA's corporate relationships, reputation and good will, and to cause injury to GLASA.

60. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

61. GLASA has no adequate remedy at law. Unless Ryan is preliminarily and permanently enjoined from committing these unlawful acts as set forth above, GLASA will continue to suffer irreparable harm.

62. GLASA is entitled to an injunction restraining Ryan, and his agents, servants and employees, and all persons in active concert or participation with them, including, but not limited to, any and all third-party promoters, vendors, and other entities, from engaging in any further such acts in violation of California common law.

63. GLASA is further entitled to recover from Ryan the damages GLASA has sustained and will sustain, as well as any and all gains, profits, benefits, and advantages obtained and to be obtained by Ryan, as a result of Ryan's unlawful acts as described herein.

64. GLASA is informed and believes, and on that basis alleges, that, in acting as alleged herein, Ryan has acted intentionally and despicably with oppression, fraud, and malice toward GLASA. Plaintiffs therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Ryan pursuant to California Civil Code § 3294.

## THIRD CLAIM FOR RELIEF

**[Unfair Competition, False Designation Of Origin, And False Advertising (Cal. Bus. & Prof. Code §§ 17200 And 17500, *Et Seq.*)]**

65. GLASA incorporates herein each and every allegation set forth above.

66. Ryan has used and is using GLASA's marks, as identified above, in commerce in connection with his attempt to put on a sports festival (in particular, the Sin City Shootout) in Las Vegas in 2018, all without the authorization or permission of GLASA, which owns the exclusive right to use the Sin City Shootout name, logo, and associated marks. Ryan is further is misrepresenting an association with the Sin City Shootout without GLASA's authorization or permission. Ryan's unlawful acts are aimed at: (a) causing confusion and mistake and misleading and deceiving the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA; and (b) misappropriating property and monies and obtaining profits, benefits, and advantages belonging to GLASA, for Ryan's own purposes and benefit.

67. GLASA is informed and believes that Ryan's unauthorized use and exploitation of GLASA's (and particularly the Sin City Shootout's) reputation, name, trademarks and trade dress, and good will and misrepresentations to the public have caused confusion and mistake and are likely to continue to cause confusion and mistake, and to mislead and deceive the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA, when in fact they are not.

68. Ryan's unlawful use and exploitation of GLASA's marks and intellectual property, corporate relationships, reputation, good will, property and assets, and Ryan's and misrepresentations to the public as set forth above, constitute trademark and service mark infringement, trade name infringement, false designation of origin, passing off, false advertising, false endorsement, and unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500, *et seq*.

69. On information and belief, Ryan has committed these acts with the intent of causing confusion and mistake and of misleading and deceiving the public into believing that Ryan and any purported tournament, goods, or services he is putting on are authorized, sponsored, or endorsed by GLASA, when in fact they are not.

70. On information and belief, Ryan, in engaging in the conduct described herein, willfully intended to trade on the reputation of GLASA and its intellectual property, including the Sin City Shootout tournament and logo, and GLASA's corporate relationships, reputation and good will, and to cause injury to GLASA.

71. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

72. GLASA has no adequate remedy at law. Unless Ryan is preliminarily and permanently enjoined from committing these unlawful acts as set forth above, GLASA will continue to suffer irreparable harm.

73. GLASA is to an injunction pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535 restraining Ryan, and his agents, servants and employees, and all persons in active concert or participation with them, including, but not limited to, any and all third-party promoters, vendors, and other entities, from engaging in any further such acts in violation of California common law.

74. GLASA is further entitled to recover from Ryan all monies, gains, profits, benefits, and advantages obtained and to be obtained by Ryan, as a result of Ryan's unlawful acts as described herein.

**FOURTH CLAIM FOR RELIEF**

**[Conversion Of Corporate Assets]**

75. GLASA incorporates herein each and every allegation set forth above.

76. As set forth above, Ryan has misappropriated GLASA's corporate assets, including, without limitation: (i) monies GLASA received in connection with

rebates paid by hotels, (ii) GLASA's Trademark in the Sin City Shootout logo; (iii) GLASA's contracts and business relationship with various hotels, venues, fields, other vendors and sponsors associated with the Sin City Shootout; (iv) GLASA's website, www.sincityshootout.com; (v) GLASA's PayPal Account associated with the Sin City Shootout; and (vi) GLASA's storage facility and all equipment and property therein. GLASA demanded the return of its property, but Ryan has refused, thereby denying GLASA its right to own and possess the property described above.

77. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

78. GLASA has no adequate remedy at law. Unless Ryan is preliminarily and permanently enjoined from committing these unlawful acts as set forth above, GLASA will continue to suffer irreparable harm.

79. GLASA is to an injunction pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17535 restraining Ryan, and his agents, servants and employees, and all persons in active concert or participation with them, including, but not limited to, any and all third-party promoters, vendors, and other entities, from engaging in any further such acts in violation of California common law.

80. GLASA is informed and believes, and on that basis alleges, that, in acting as alleged herein, Ryan has acted intentionally and despicably with oppression, fraud, and malice toward GLASA. Plaintiffs therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Ryan pursuant to California Civil Code § 3294.

**FIFTH CLAIM FOR RELIEF**

**[Breach Of Fiduciary Duty Owed To Corporation]**

81. GLASA incorporates herein each and every allegation set forth above.

82. Ryan served as a Board Member and Officer of GLASA from in or about mid-2005 to June 2, 2017, when Ryan resigned his positions. In his positions, Ryan owed substantial fiduciary duties of loyalty to GLASA and his fellow directors, officers, officers and members.

83. In taking the actions described above, Ryan knowingly and intentionally acted against GLASA's interests and breached his fiduciary duties.

84. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

85. GLASA is informed and believes, and on that basis alleges, that, in acting as alleged herein, Ryan has acted intentionally and despicably with oppression, fraud, and malice toward GLASA. Plaintiffs therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Ryan pursuant to California Civil Code § 3294.

## SIXTH CLAIM FOR RELIEF

## [Intentional Interference With Contractual Relations]

86. GLASA incorporates herein each and every allegation set forth above.

87. There were and are: (a) contracts between GLASA and host hotels, including the Tropicana; (b) contacts between GLASA and various fields and venues; and (c) other contracts between GLASA and other vendors in connection with GLASA's execution of the Sin City Shootout. These contracts provided and provide, or were intended to provide, economic benefits and other advantages to GLASA.

88. On information and belief, Ryan knew and knows of the existence of those contracts.

89. As set forth above, Ryan has intentionally engaged in activities intended to interfere with and disrupt the performance of those contracts.

90. As set forth above, Ryan's conduct has interfered with and prevented performance of these contracts, or made performance of these contracts more expensive or difficult.

91. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

92. GLASA is informed and believes, and on that basis alleges, that, in acting as alleged herein, Ryan has acted intentionally and despicably with oppression, fraud, and malice toward GLASA. Plaintiffs therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Ryan pursuant to California Civil Code § 3294.

## SIXTH CLAIM FOR RELIEF

## [Intentional and Negligent Interference With Prospective Economic Advantage]

93. GLASA incorporates herein each and every allegation set forth above.

94. GLASA was and is in economic relationships that resulted and result in economic benefits and advantages to GLASA, including, but not limited to: (a) relationships between GLASA and host hotels, including the Tropicana; (b) relationships between GLASA and various fields and venues; (c) relationships between GLASA and various other sporting organizations; and (d) relationships between GLASA and other vendors in connection with GLASA's execution of the Sin City Shootout. These relationships provided and provide, or were intended to provide, economic benefits and other advantages to GLASA.

95. On information and belief, Ryan knew and knows of the existence of those relationships.

96. As set forth above, Ryan has either intentionally engaged in activities intended to interfere with and disrupt those relationships or failed to act with

reasonable care knowing that his conduct would interfere with and disrupt those relationships.

97. As set forth above, Ryan's conduct has interfered with those relationships.

98. As a direct and proximate result of Ryan's unlawful acts as described herein, GLASA has suffered and will continue to suffer injury to its business, goodwill, and property, in an amount to be determined at trial.

99. GLASA is informed and believes, and on that basis alleges, that, in acting as alleged herein, Ryan has acted intentionally and despicably with oppression, fraud, and malice toward GLASA. Plaintiffs therefore are entitled to an award of punitive damages for the sake of example and by way of punishing Ryan pursuant to California Civil Code § 3294.

## **SEVENTH CLAIM FOR RELIEF**

**[Declaratory Judgment Concerning Ownership Of Assets]**

100. GLASA incorporates herein each and every allegation set forth above.

101. An actual controversy has arisen and exists between GLASA and Ryan concerning the ownership certain assets, including, without limitation: (i) the portion of monies GLASA received in connection with rebates paid by hotels that Ryan diverted to himself, (ii) GLASA's Trademark in the Sin City Shootout logo; (iii) GLASA's contracts and business relationship with various hotels, venues, fields, other vendors and sponsors associated with the Sin City Shootout; (iv) GLASA's website, www.sincityshootout.com; (v) GLASA's PayPal Account associated with the Sin City Shootout; and (vi) GLASA's storage facility and all equipment and property therein.

102. GLASA, therefore, seeks a declaration from the Court that GLASA is the sole and exclusive owner of the foregoing assets.

## EIGHTH CLAIM FOR RELIEF

## [Cancellation Of Federal Service Mark Registrations, 15 U.S.C. § 1064]

103. GLASA incorporates herein each and every allegation set forth above.

104. As stated above, Ryan has applied to register the Sin City Shootout logo under his name with the USPTO (serial number 85429186). Ryan does not own any rights in the Sin City Shootout logo or any other mark associated therewith.

105. Because (a) the mark for which Ryan has applied to the USPTO for registration does not belong to Ryan, (b) use of the mark would lead to a likelihood of confusion with marks owned and used by GLASA in commerce, (c) Ryan has engaged in unclean hands arising from their use in commerce of this mark and his misrepresentations to the USPTO in connection with his application for the registration of the purported mark, and (d) Ryan has engaged in nonprivileged, anti-competitive trademark and service mark misuse and infringement, passing off, false designation of origin, false endorsement, false advertising and unfair competition, GLASA and the public have been and are being damaged. As a result, GLASA prays that the Court enter an order directing that the USPTO cancel any registrations that might issue based on Ryan's applications filed with the USPTO to register the purported mark, pursuant to 15 U.S.C. § 1064.

## PRAYER FOR RELIEF

**WHEREFORE**, GLASA seeks the following relief as a result of the unlawful acts described above:

(a) A judgment in favor of GLASA on all of the claims for Relief pleaded herein.

(b) An order granting preliminary and permanent injunctive relief against Ryan, and his agents, servants and employees, and all persons in active concert or participation with them, including, but not limited to, any and all third-party promoters, vendors, and other entities, enjoining them from:

(i) Infringing the Sin City Shootout logo and any other associated marks;

(ii) Using the terms "Sin City Shootout," "Sin City Sports Festival" or "Sin City Sports" in a trademark, service mark, logo, or brand sense;

(iii) Continuing to use any trade name that includes the phrases "Sin City Shootout," "Sin City Sports Festival" or "Sin City Sports;"

(iv) Controlling or accessing the website, www.sincityshootout.com and its content;

(v) Controlling or accessing GLASA's PayPal account;

(vi) Controlling or accessing any of GLASA's storage facilities and all equipment and property therein, including both property related to the Sin City Shootout and GLASA generally;

(vii) Failing to cooperate with GLASA in transferring the property, websites, and accounts described above, and any other GLASA property to GLASA, including any account and password information needed to access the foregoing;

(viii) Failing to cooperate with GLASA in transferring or assigning to GLASA any contract entered into in connection with the Sin City Shootout that is in any name other than GLASA;

(ix) Failing to cooperate with GLASA in transferring or assigning to GLASA any reservations for fields or venues that are necessary for GLASA to plan and execute the Sin City Shootout in 2018 and thereafter.

(x) Engaging in any further acts of infringement, unfair competition, false advertising, false designation of origin. passing off, and unlawful, unfair and fraudulent business practices through the use of the Sin City Shootout logo; and

(xi) Engaging in any acts that may interfere with GLASA's ability to plan and execute the 2018 event, including, without limitation, interfering with GLASA's relationships with softball teams, softball leagues, other sports leagues, any athlete or other participant in the Sin City Shootout, and any hotel, vendor, field,

venue, or other third party with whom GLASA has or needs a relationship with to plan and execute the Sin City Shootout in 2018 and thereafter.

(c) An order directing that anything Ryan has created that infringes on GLASA's trademark be impounded and destroyed, including all copies held by any and all third parties known to Ryan, and that Ryan be required to file with the Court and to serve on GLASA, within thirty (30) days after service of the Court's Order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which Ryan has complied with the Court's order.

(d) An award of compensatory and consequential damages flowing from Ryan's wrongful acts as described herein.

(e) An order requiring Ryan to disgorge any and all revenues, gains, profits, and advantages obtained and to be obtained by Ryan as a result of his unlawful acts as described herein.

(f) A declaration from the Court that GLASA is the sole and exclusive owner of (i) the portion of monies GLASA received in connection with rebates paid by hotels that Ryan diverted to himself, (ii) GLASA's Trademark in the Sin City Shootout logo; (iii) GLASA's contracts and business relationship with various hotels, venues, fields, other vendors and sponsors associated with the Sin City Shootout; (iv) GLASA's website, www.sincityshootout.com; (v) GLASA's PayPal Account associated with the Sin City Shootout; and (vi) GLASA's storage facility and all equipment and property therein.

(g) An order directing the USPTO to cancel any registrations that might issue based on Ryan's application filed with the USPTO to register the purported Sin City Shootout logo (serial number 85429186), pursuant to 15 U.S.C. § 1064.

(h) An order finding that this case is exceptional and awarding enhanced damages and attorney's fees pursuant to 15 U.S.C. §1117(a).

(i) An award of punitive damages against Ryan and in favor of GLASA.

(j) An order that GLASA recovers its costs from Ryan.

(k) An order awarding GLASA prejudgment and post-judgment interest.

(l) An order for such other and further relief as the Court may deem just and appropriate.

Dated: June 14, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/Jay T. Ramsey*

KENT R. RAYGOR
JAY T. RAMSEY

Attorneys for Plaintiff
THE GREATER LOS ANGELES SOFTBALL ASSOCIATION

## DEMAND FOR JURY TRIAL

GLASA hereby demands a jury trial on all issues triable as of right to a jury.

Dated: June 14, 2017 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/Jay T. Ramsey*

KENT R. RAYGOR
JAY T. RAMSEY

Attorneys for Plaintiff
THE GREATER LOS ANGELES SOFTBALL ASSOCIATION